IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| AFCO CARGO PIT LLC, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 10-1080 |
| DHL EXPRESS (USA), INC., | ) | Magistrate Judge Cathy Bissoon[1] |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

### I. MEMORANDUM

Plaintiff landlord AFCO Cargo PIT LLC asserts that Defendant tenant DHL Express (USA), Inc. breached a Lease agreement when it vacated the leased premises prior to the expiration of the renewal term of the Lease. Pending before the Court is Defendant's Motion for Judgment on the Pleadings (Doc. 23), in which Defendant asserts that Plaintiff has failed to state a claim for breach of contract because Defendant could not have renewed the Lease. Defendant asserts that, after the original term of the Lease expired, it was a holdover tenant occupying the premises on a month-to-month basis. For the reasons stated herein, the Court will deny Defendant's motion.

**BACKGROUND**

**A. Factual Background**

While the pertinent facts in this case appear to be largely undisputed, see Am. Answer (Doc. 26), the facts below are presented as alleged in the Amended Complaint (Doc. 17). See Allah v. Al-Hafeez, 226 F.3d 247, 249-50 (3d Cir. 2000) (noting that on a defendant's motion for

---

[1] By consent of the parties, the undersigned sits as the District Judge in this case. See Consent forms (Docs. 7, 13).

judgment on the pleadings, all allegations in the complaint must be accepted as true and all reasonable inferences must be drawn in favor of the plaintiff).

On February 1, 2002, Plaintiff AFCO Cargo PIT LLC entered into a Lease with ABX Air, Inc., by which Plaintiff subleased to ABX Air certain property at the Pittsburgh International Airport. Am. Compl. ¶ 10 (Doc. 1). The Lease had an initial term of five years. Id. at ¶ 11.

Rider No. 1 to the Lease granted ABX Air the right to renew the Lease for a five year renewal term. Id. at ¶ 11; Rider No. 1 (Doc. 17-1 at 54). Rider No. 1 states that "[t]he renewal option provided for in this Rider No. 1 shall be personal to Tenant and shall not be applicable to any assignee, subtenant or successor of Tenant." Rider No. 1 at ¶ 5 (Doc. 17-1 at 54).

Through a series of assignments, Defendant DHL Express (USA), Inc. was assigned ABX Air's rights under the Lease in 2003. Am. Compl. ¶¶ 12-13.

On May 15, 2007, Defendant e-mailed Plaintiff, stating: "I can confirm that we are planning to renew our lease at the current PIT location for 5 years." Doc. 17-2; see also Am. Compl. ¶ 14. On May 16, 2007, Plaintiff responded via e-mail, explaining: "As per the Lease document, Rider No. 1, 'Renewal Option', Tenant must notify Landlord by the giving of a written notice. A 'formal' notice by e-mail would serve this office to confirm your renewal of the Lease as per the terms of the agreement." Doc. 17-3; see also Am. Compl. ¶ 16. Defendant e-mailed Plaintiff on May 22, 2007, stating: "Per our phone con, I received confirmation today from DHL Strategic Planning to exercise the PIT 5 year lease renewal." Doc. 17-4; see also Compl. ¶ 18.[2]

Sometime following this e-mail exchange, Defendant paid Plaintiff rent retroactive to February 1, 2007. Am. Compl. ¶ 19. Defendant paid Plaintiff rent through approximately June

---

[2]  Defendant denies that Exhibit 4 to Plaintiff's Complaint (Doc. 17-4) is a "true and correct copy" of the May 22, 2007 e-mail from Defendant to Plaintiff. Am. Answer ¶ 18.

2

2009, in accordance with the Renewal Term rent formula set forth in Paragraph 4 of Rider No. 1 of the Lease. Id. at ¶ 20.

On June 18, 2009, Defendant sent Plaintiff a letter notifying Plaintiff that: "DHL Express hereby terminates the above referenced Lease for the space located at and about Cargo Building 1, Pittsburgh International Airport. This termination is effective today." Doc. 17-5; see also Am. Compl. ¶ 23.

On July 17, 2009, Plaintiff informed Defendant by letter that Plaintiff believed Defendant had no right to terminate the Lease because Defendant exercised its five-year renewal option pursuant to Rider No. 1, making the expiration date of the Lease January 31, 2012. See Doc. 17-6; Am. Compl. ¶ 24. In that letter, Plaintiff also informed Defendant that Plaintiff believed Defendant was in default of the lease for vacating the leased premises. See Doc. 17-6; Am. Compl. ¶ 24.

On February 4, 2010, and July 23, 2010, Plaintiff's counsel sent Defendant letters demanding payment for amounts allegedly due and owing under the Lease. Am. Compl. ¶¶ 26, 28. Defendant did not pay the amounts demanded by Plaintiff, leading to this action. Compl. ¶¶ 27, 29.

**B. Procedural Background**

After Defendant filed a Motion for Judgment on the Pleadings (Doc. 15) pursuant to Federal Rule of Civil Procedure 12(c), Plaintiff filed an Amended Complaint (Doc. 17). In light of the Amended Complaint, this Court denied Defendant's Motion for Judgment on the Pleadings as moot. Text Order dated Nov. 2, 2010. Defendant then filed the currently pending Motion for Judgment on the Pleadings (Doc. 23), and an Amended Answer to the Amended Complaint (Doc. 26).

Defendant asserts that it is entitled to judgment on the pleadings because Rider No. 1 unambiguously provides that the renewal option under the Lease "shall be personal to Tenant and shall not be applicable to any assignee, subtenant or successor of Tenant." Because Defendant is an assignee of the Lease, Defendant asserts that it had no right to renew the Lease and therefore could not have breached the Lease provisions regarding the alleged renewal term. Defendant also asserts that it did not renew the Lease because it did not provide written, "executed" notice of renewal and failed to exercise the renewal option at least six months prior to the expiration of the original Lease term, as required by the terms of Rider No. 1.

## ANALYSIS

### A. Legal Standard

Judgment on the pleadings under Rule 12(c) "will not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir. 2008) (quoting Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 290-91 (3d Cir. 1988)). All inferences from the facts presented in the pleadings must be drawn in the light most favorable to the nonmoving party. Id.

### B. Modification of the Lease

Material issues of fact remain to be resolved as to whether the parties modified the Lease such that Defendant renewed the Lease for a five-year renewal term. Under Pennsylvania law, a written contract may be modified by subsequent words or conduct.[3] Universal Builders, Inc. v. Moon Motor Lodge, Inc., 244 A.2d 10, 15-16 (Pa. 1968); see also First Nat'l Bank of Pa. v. Lincoln Nat'l Life Ins. Co., 824 F.2d 277, 280 (3d Cir. 1987) (discussing Pennsylvania law).

---

[3] Pennsylvania law applies to the Lease. Doc. 17-1 at 37, § 23.18 ("This Lease shall be governed by and construed under the laws of the State"); Doc. 17-1 at 7, § 1.01(Z) (defining "State" as Pennsylvania).

Such a modification, "if proven by clear, precise and convincing evidence, is valid despite a provision in the original written agreement prohibiting non-written modifications." First Nat'l Bank, 824 F.2d at 280 (citing Nicolella v. Palmer, 248 A.2d 20, 23 (Pa. 1968)). Such a modification is enforceable under at least two theories: (1) an agreement separate from the written contract; and (2) waiver of the written authorization requirement. See Universal Builders, 244 A.2d at 15.

Defendant asserts that Plaintiff's "claims of waiver and modification can only stand with proof that both AFCO and DHL agreed to these modifications in writing." Def.'s Br. at 5. Defendant relies on Hoff Supply Co. v. Allen-Bradley Co., 768 F. Supp. 132, 135 (M.D. Pa. 1991). The court in Hoff Supply relied upon C.I.T. Corp. v. Jonnet, 214 A.2d 620 (Pa. 1965), and held that "oral modifications of contracts which expressly provide that modifications may only be made if in writing are unenforceable under . . . the common law." Hoff Supply, 768 F. Supp. at 135.

But the Hoff Supply court's reliance upon C.I.T. was misplaced. C.I.T. explicitly acknowledged that a subsequent oral agreement could modify a contract, even if the contract requires all modifications to be in writing. C.I.T., 214 A.2d at 622. C.I.T. simply held that such an oral modification is valid only if the written modification requirement is first waived. Id.

The Pennsylvania Supreme Court later explained in Universal Builders that C.I.T. "is misleading" because it ignored circumstances in which a contractual written modification requirement can be waived. Universal Builders, 244 A.2d at 16. The court explained that the effectiveness of an oral modification "in spite of a contract condition that modifications must be written depends upon whether enforcement of the condition is or is not barred by equitable considerations, not upon the technicality of whether the condition was or was not expressly and

5

separately waived before the non-written modification." Id. Further, the parties' course of conduct in performing the contract may indicate whether the written terms of a contract have been modified. See id. at 15; First Nat'l Bank, 824 F.2d at 281. Thus, contrary to Defendant's assertions, the parties could have modified the Lease agreement even without a written agreement signed by the parties.

Plaintiff alleges that Defendant renewed the Lease under the terms provided in Rider No. 1, even though the parties did not strictly comply with the Lease provisions related to renewal. Defendant is an assignee to the Lease, but Rider No. 1 to the Lease provides that "[t]he renewal option provided for in this Rider No. 1 . . . shall not be applicable to any assignee, subtenant or successor of Tenant." Doc. 17-1 at 54, § 5. Defendant allegedly renewed the Lease after expiration of the original term, but Rider No. 1 provides that the renewal option must be exercised by the tenant "no later than 6 months prior to the expiration of the original term." Id. at 54, §§ 1-2. Defendant allegedly renewed the Lease through a series of e-mails between the parties, but under the Lease, "No amendment or modification of this Lease shall be binding or valid unless expressed in a writing executed by both parties hereto."[4] Doc. 17-1 at 37, § 23.16.

Accepting all allegations of the Amended Complaint as true, equitable considerations bar enforcement of the condition that all modifications to the Lease must be "expressed in a writing executed by both parties." See Universal Builders, 244 A.2d at 16. Defendant technically was not entitled to the five-year renewal term under the Lease, both because Defendant was an assignee and because Defendant sought renewal after the deadline to exercise the renewal option.

---

[4] Defendant asserts that a series of e-mails is not "a writing" and not "executed." Def.'s Br. at 11-12. Because the effectiveness of a contractual modification depends on equitable considerations, Universal Builders, 244 A.2d at 16, this Court need not decide at this stage whether a series of e-mails could technically satisfy the Lease provisions regarding "written notice executed" by the tenant.

Defendant nonetheless sought, via e-mail, a five-year renewal from Plaintiff. Doc. 17-2; see also Am. Compl. ¶ 14. Plaintiff informed Defendant that, under the Lease terms, "written notice" was required for renewal, and that such notice could be made by e-mail. Doc. 17-3; see also Am. Compl. ¶ 16. Defendant responded via e-mail with its "confirmation . . . to exercise the PIT 5 year lease renewal." Doc. 17-4; see also Compl. ¶ 18. Defendant then paid rent through approximately June 2009 in accordance with the renewal term rent formula set forth in Paragraph 4 of Rider No. 1 to the Lease, as if the parties had renewed the Lease under the terms set forth in Rider No. 1. Am. Compl. ¶¶ 20-21. Notably, the renewal rent terms set forth in Rider No. 1 were more favorable to Defendant than the holdover tenant rent terms under the Lease. Compare Doc. 17-1 at 54, ¶ 4 (setting renewal rent), with Doc. 17-1 § XXI.A (setting holdover tenant rent); see also Am. Compl. ¶ 37 (alleging that renewal rent under Rider No. 1, ¶ 4 is lower than holdover tenant rent under the Lease, Article XXI); Am. Answer ¶ 37 (admitting that Defendant paid rent that was less than the holdover tenant rent provided under the Lease, Article XXI).

Under these circumstances, it would be inequitable to allow Defendant to assert now that it was incapable of renewing the Lease. Defendant requested a five-year lease renewal and sent Plaintiff an e-mail specifically confirming exercise of a "5 year lease renewal." Similarly, it would be inequitable to allow Defendant to assert now that its e-mail was ineffective to renew the Lease. Plaintiff informed Defendant that e-mail would suffice as written notice of renewal, and Defendant responded with it unequivocal "confirmation . . . to exercise the PIT 5 year lease renewal." Further, it would be inequitable to allow Defendant to assert now that it was a holdover tenant, when Defendant paid rent for over two years under the more favorable rent formula for a renewal tenant.

7

Because the effectiveness of Plaintiff's alleged contract modification depends upon equitable considerations, not upon the "technicality" of whether written contractual conditions were expressly and separately waived before the non-written modification, Universal Builders, 244 A.2d at 16, the parties' correspondence and subsequent course of conduct could provide "clear, precise, and convincing evidence" that the parties modified the Lease such that the parties entered into a five-year renewal term pursuant to the terms set forth in Rider No. 1 to the Lease. See First Nat'l Bank, 824 F.2d at 280. Thus, a "material issue of fact remains to be resolved" and Defendant is not entitled to judgment as a matter of law. Rosenau, 539 F.3d at 221.

### C. Equitable Estoppel

Because a material issue of fact remains to be resolved as to whether the parties modified the Lease, this Court need not decide whether equitable estoppel provides an alternative basis for denial of Defendant's Motion for Judgment on the Pleadings. This Court nonetheless notes that equitable estoppel appears to provide an alternative basis for Plaintiff's claim to at least survive the pleading stage.

Equitable estoppel arises when the words or conduct of one party induce another party to act to its detriment in reasonable reliance on the first party's words or conduct. See Zitelli v. Dermatology Educ. & Research Found., 633 A.2d 134, 139 (Pa. 1993). For similar reasons as those suggesting a contract modification, Plaintiff could have reasonably relied on Defendant's e-mails and conduct that indicated Defendant's intention to enter into a five-year lease renewal. Assuming all facts alleged in the Amended Complaint are true (as we must at this stage), Defendant should be equitably estopped from asserting that it did not enter into a five-year renewal term of the Lease.

The two cases cited by Defendant are inapposite. First, Phoenix Techs., Inc. v. TRW, Inc., 840 F. Supp. 1055 (E.D. Pa. 1994), is inapplicable because it applies Ohio law. Phoenix

8

also is distinguishable because it found that the plaintiff could not reasonably rely on defendant's oral promise to provide financing, where a written contract between the parties specifically provided that "[u]nder no circumstances will [the defendant] be deemed to have violated any covenant in or obligation imposed by the Agreement solely because of [the defendant's] refusal to extend financing to [the plaintiff]." Id. at 1062, 1067. Thus, even if the defendant promised to provide financing, it could not be liable for breach under the terms of the parties' written agreement. Here, Defendant's alleged conduct did not satisfy the procedures for renewal set forth in the Lease. Nonetheless, Defendant's alleged promise to be bound by a five-year renewal term under the Lease does not conflict with the express terms of the Lease. Phoenix therefore is inapposite.

Second, Rho v. Vanguard OB/GYN Assocs., P.C., No. Civ. A. 98-2673, 1999 WL 228993 (E.D. Pa. Apr. 15, 1999), is inapplicable because it addressed whether a party could reasonably rely on an oral promise made before the parties' entered into a written contract. The court found that when a written contract includes an integration clause, a party cannot rely on an earlier oral promise that conflicts with the written contract. Id. at *5-6. As explained above, Defendant's alleged promise here does not conflict with the terms of the written Lease. Further, Plaintiff alleges that Defendant's e-mails and subsequent conduct after entering into the written Lease agreement induced Plaintiff into believing Defendant intended to renew the Lease for a five-year term. This is not a case in which an earlier oral promise is contradicted by a later written agreement. Rho therefore is inapposite.

## **CONCLUSION**

For all of the reasons stated above, Defendant's Motion for Judgment on the Pleadings (Doc. 32) is denied.

9

## II. ORDER

For the reasons stated above, the Court hereby **ORDERS** that Defendant's Motion for Judgment on the Pleadings (Doc. 32) is **DENIED**.

**IT IS SO ORDERED**.

s/ Cathy Bissoon
Cathy Bissoon
U.S. Magistrate Judge

December 10, 2010

cc (via e-mail):

All counsel of record.